IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Ronda F. Burch, | ) | C/A No.: 6:04-1062-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Jo Anne B. Barnhart, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

The plaintiff, Ronda F. Burch, brought this action pursuant to § 205(g) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB").

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 405(g) of that Act provides: "[T]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964); *see*, *e.g.*, *Daniel v. Gardner*, 404 F.2d 889 (4th Cir. 1968); *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966); *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976). This standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *See*, *e.g.*, *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299 (4th Cir. 1968). "[T]he court [must] uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock v. Richardson*, 483 F.2d 773, 775 (4th

1

Cir. 1972). As noted by Judge Sobeloff in *Flack v.Cohen*, 413 F.2d 278 (4th Cir. 1969), "[f]rom this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Id*. at 279. "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## Administrative Proceedings

The plaintiff filed her current application for DIB on September 8, 2001, alleging a disability onset date of March 8, 1997, due to fatigue, fibromyalgia, major depression, Raynaud's disease, high blood pressure, general anxiety disorder, poor memory, attention deficit disorder, mitral valve prolapse, osteoarthritis, dementia, vertigo, allergies, plantar fasciitis, and insomnia. Her application was denied initially and upon reconsideration. The plaintiff then requested a hearing before an administrative law judge (ALJ) which was held January 28, 2003. The ALJ issued a decision on May 24, 2003, finding that plaintiff had not been disabled prior to March 31, 1998, the date she last met the insured status requirements for entitlement to disability benefits under Title II of the Act. The Appeals Council denied the plaintiff's request for review, thus making the ALJ's decision the Commissioner's "final decision" for purposes of judicial review. *See* 42 U.S.C. §405(g); 20 C.F.R. §404.981 (2003).

The ALJ made the following findings in this case:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through March 31, 1998.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of

disability.

3. The claimant had an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).

4. These medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not fully credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

7. From March 8, 1997 through March 31, 1998, the claimant had the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently; she was able to perform simple unskilled work; she required a sit or stand option; she was not able to crawl, crouch, climb, squat or kneel; she was unable to use her lower extremities for pushing or pulling; and she was unable to use her upper extremities for work above shoulder level.

8. The claimant was unable to perform any of her past relevant work (20 CFR § 404.1565).

9. The claimant was an "individual closely approaching advanced age" (20 CFR § 404.1563).

10. The claimant has a high school education (20 CFR § 404.1564).

11. The claimant has no transferable skills from any past relevant work (20 CFR § 404.1568).

12. The claimant had the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).

13. Although the claimant's exertional limitations did not allow her to perform the full range of light work, using Medical- Vocational Rule 202.14 as a framework for decision-making, and based upon the testimony of the vocational expert, there were a significant number of jobs in the national economy that she could have performed. Examples of such jobs include work as a hand packer and a final inspector.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through her date last insured (20 CFR § 404.1520(f)).

**Facts**

The plaintiff was born on October 8, 1946; she was 51 years old at the time her insured status

expired on March 31, 1998. She is a high school graduate with prior work experience as a secretary.

## **Appeal from the Commissioner's Decision**

Pursuant to Local Civil Rule 83.VII.02(A), D.S.C, this action was referred to United States Magistrate Judge William M. Catoe. On August 2, 2005, Magistrate Judge Catoe filed a Report and Recommendation ("the Report") suggesting that the decision of the Commissioner be affirmed. The plaintiff filed objections to the Report on August 23, 2005.

The Magistrate Judge concluded that the record contains substantial evidence to support the conclusion of the Commissioner that plaintiff be denied benefits.

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

*Wallace v. Housing Auth. of the City of Columbia*, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

In his objections to the Report, the plaintiff claims that the Magistrate Judge erred as a matter of law. The plaintiff makes the following specific objections to the Report:

1. The Report does not properly apply the plaintiff's burden of proof in this case. (Objections p. 2.)

2. The Report applies an improper legal standard in evaluating the opinions of Ms. Burch's treating rheumatologist, Dr. Harper. (Objections p. 4.)

3. The Report fails to provide the complete evaluation of Dr. Harper's opinions required by applicable regulations. (Objections p. 8.)

4

4.  The Report fails to apply the proper standard in this circuit for evaluating the plaintiff's symptoms, including her pain. (Objections p. 9.)

5.  The Report impermissibly fails to consider the entire case record in evaluating the plaintiff's credibility. (Objections p. 11.)

6.  The Report improperly evaluates the vocational evidence concerning the plaintiff's residual functional capacity ("RFC") for work. (Objections p. 12.)

7.  The Report fails to acknowledge that it is the Commissioner who has failed to meet her burden of proof in this case. (Objections p. 14.)

**Objection 1: Plaintiff's Burden of Proof**

The plaintiff objects on the basis that the Report does not properly apply the plaintiff's burden of proof in this case. Plaintiff asserts that the Report improperly states that she "bears the burden of showing she was <u>disabled</u> prior to the date she was last insured." (Objections p. 3.) Plaintiff asserts that she did not have the burden to show "disability" only that she could no longer perform her past relevant work. Plaintiff then asserts that "the evidentiary burden is shifted to the Commissioner to establish that there are other jobs in significant numbers which Ms. Burch could perform." (Objections p. 3.)

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents her from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a); *Hall v. Harris*,

658 F.2d 260 (4th Cir. 1981).

The plaintiff is correct that once she is able to establish step four (4) of the analysis, that she has an impairment which prevents past relevant work, the burden shifts to the Commissioner to establish that other jobs exist in significant numbers in the national economy that she could perform given her functional limitations, age, education, work experience, and physical and mental limitations. *See English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993). That is clearly the law laid out in the Report.

The Court notes that the Magistrate Judge acknowledged the correct shifting of the burden in his Report:

> Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert.

Report p. 10, *citing Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

The Court finds that the Magistrate Judge properly applied the plaintiff's burden of proof in this case. As discussed below, the ALJ properly questioned the VE and established other jobs that the plaintiff could perform, satisfying the fifth element of the framework.

**Objection 2: Opinions of Ms. Burch's Treating Rheumatologist Dr. Harper.**

The plaintiff objects alleging that the Magistrate Judge erred in failing to give Dr. Harper's opinion controlling weight. Dr. Harper is a Board Certified rheumatologist who began treating the plaintiff in October of 1998. In a declaration made on September 23, 2002, for the plaintiff's social security hearing, Dr. Harper stated: "Ms. Burch's fibromyalgia, in conjunction with her other medical

problems, would have significantly impaired her mental and physical capacities and prevented gainful employment on a regular a continuing basis as early as March 31, 1998, and most probably well before that date." (Tr. 326.) The Magistrate Judge concluded that Dr. Harper's opinion was not entitled to controlling weight because it was not supported by evidence in the record. (Tr. 11-12.) The plaintiff argues that the Magistrate's decision not to give Dr. Harper's opinion controlling weight was an error because "the applicable law and Ruling establish that the onset of a disabling impairment can be inferred from an informed judgment." (Objections p. 7.)

The SSA defines "onset date of disability" as "the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20. In determining the onset date of disability relevant factors include the individual's allegation, work history, and medical evidence. *Id*. That ruling specifically states that "the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence." *Id*. "The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months." *Id*.

In making his opinion that the plaintiff was disabled "as early as March 31, 1998," Dr. Harper stated in his Declaration that he reviewed the following medical records:

a.  Treatment records of Roland L. Skinner, III, M.D. dated 10/25/95 to 05/27/96 along with imaging studies and laboratory reports (Tr. 141-154)

b.  Treatment records of E.C. O'Bryan, Jr., M.D. dated 08/14/84 to 05/26/98 (Tr. 161-179);

c.  Progress record of Edwin A. Smith, M.D. and MUSC laboratory reports dated 04/01/98 (Tr. 155-160);

d.  Treatment records of Patricia Welch, M.D. dated 09/30/98 to 11/10/98 (Tr. 187-196); and

e.      Treatment records of Joel Duncan, M.D. dated 100/5/98 to 10/13/98 (Tr. 180-186).

(Tr. 325-326.) Dr. Harper states that his opinion as to the plaintiff's disability is based upon his review of these medical records as well as his examination of the plaintiff.

The Court has reviewed the medical documents in the record that were relied upon by Dr. Harper in rendering his opinion. Dr. O'Bryan, a cardiologist, treated the plaintiff from 1984 through 1994 for a mitral valve prolapse and episodes of arthralgia. The plaintiff returned to see Dr. O'Bryan on February 10, 1998, complaining of pain, redness, and occasional swelling of both feet and Dr. O'Bryan stated that she has "classical Raynaud's" in her toes and fingers along with "[g]eneralized arthritis complaints." (Tr. 174.) Dr. O'Bryan prescribed Norvasc and told the plaintiff to take Tylenol. (Tr. 174.) The plaintiff returned to see Dr. O'Bryan on February 17, 1998, for a follow up visit. (Tr. 175.) He increased her dosage of Norvasc and referred the plaintiff to the MUSC Rheumatology Department. (Tr. 175.) On March 10, 1998, Dr. O'Bryan stated: Rhonda Burch "has Raynaud's and possible rheumatology disorder. She is considered to be disabled at the present time. Her future disability will be dependent upon future medical evaluations." (Tr. 177.)

Plaintiff had an office visit with Dr. Skinner on October 25, 1995, and referred her for evaluation of paresthesias of her face and limbs. (Tr. 141.) Dr. Skinner concluded that plaintiff's "symptoms were probably a combined allergic basis from the Serzone and possibly also some of them were on a[n] anxiety basis." (Tr. 142.) On December 1, 1995, Dr. Skinner noted that the plaintiff was "doing well and has no new complaints." (Tr. 148.) He discharged the plaintiff from his care noting, "We would want to re-evaluate her if she has any further symptoms or new problems." (Tr. 148.)

Plaintiff saw Dr. Smith at the MUSC Rheumatology Department on April 1, 1998. Based on his physical examination of the plaintiff he noted that she had positive fibromyalgia tender points.

(Tr. 157.) Dr. Smith encouraged the plaintiff to exercise for her fibromyalgia and gave her reassurance. (Tr. 158.)

The plaintiff saw Dr. Welch on September 30, 1998. (Tr. 187.) Dr. Welch referred the plaintiff to Dr. Duncan for a cardiac evaluation. (Tr. 187.) Dr. Welch's notes from October 30, 1998, state that the plaintiff "[h]as been diagnosed recently with fibromyalgia. (Tr. 196.)

Dr. Welch referred the plaintiff to Dr. Duncan "due to nonspecific complaints of chest pain, shortness of breath and general myalgias." (Tr. 180.) On October 5, 1998, Dr. Duncan recommended that the plaintiff obtain a Stress Cardiolite and echo to assess for any significant valvular disease. (Tr. 180-181.) Dr. Duncan's October 13, 1998, office notes indicate that no further cardiac evaluation was recommended and that follow-up with the plaintiff would be on a PRN basis only. (Tr. 185.)

SSR 83-20 specifically states:

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis.

In the instant case, the Magistrate Judge concluded that Dr. Harper's opinion is not supported by the evidence in the record. This Court agrees. Dr. O'Bryan, a cardiologist, is the only one of plaintiff's doctor's to address her disability. In his March 3, 1998 letter he indicates that she should be considered to be disabled at this time. However, the letter does not indicate the standard used in determining disability and his medical records do not support any physical limitations on the plaintiff. While Dr. Harper, a rheumatologist, states that plaintiff's mental and physical impairments would have prevented gainful employment, there is no evidence in the record to support his conclusion,

9

despite the fact that the plaintiff had several doctor's visits in the months proceeding the date the plaintiff was last insured.[1]

**Objection 3: Evaluation of Dr. Harper's Opinions**

The plaintiff argues that the Magistrate Judge failed to weigh Dr. Harper's opinion according to the five factors set out in 20 C.F.R. § 404.1527(d)(2), and instead "simply concludes that the Commissioner did not give 'controlling weight' to Dr. Harper's opinion, because it was not supported by substantial evidence, and because Dr. Harper had not physically examined the Plaintiff prior to the date she was last insured."

Under the "treating physician rule," the opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contrary evidence." *Coffman*, 829 F.2d at 517; *see also Wilkins v. Secretary, Dep't of Health and Human Serv.*, 953 F.2d 93, 96 (4th Cir. 1991); *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986).

On August 1, 1991, the Social Security Administration promulgated a regulation entitled "Evaluating medical opinions about your impairment(s) or disability." 20 C.F.R. § 404.1527. This regulation supersedes the Fourth Circuit's "treating physician rule." *See Shrewsbury v. Chater*, 1995 WL 592236 at *9 n.5 (4th Cir. 1995) (unpublished) ("As regulations supercede contrary precedent, the cases cited by Shrewsbury defining the scope of the 'treating physician rule' decided prior to 20 C.F.R. § 416 and related regulations are not controlling.") (citation omitted). Under section 404.1527, the opinion of a treating physician is entitled to more weight than the opinion of a non-treating physician. It is only given controlling weight, however, if it is "well-supported by medically

---

[1] As discussed more fully below, a treating physician's opinion must be given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2).

10

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). This standard, of course, is more stringent than the old "treating physician rule," which accorded a treating physician's opinion controlling weight unless the record contained persuasive evidence to the contrary. *See Coffman*, 829 F.2d at 517.

The record indicates that the plaintiff first visited Dr. Harper on October 5, 1998, more than six (6) months beyond the date the plaintiff was last insured. The plaintiff states that she did not visit Dr. Harper sooner because she could not afford to do so and argues that Dr. Harper's opinion is consistent with the medical records, specifically Dr. O'Bryan's opinion and the records from MUSC.

As discussed above, while Dr. Harper states that plaintiff's mental and physical impairments would have prevented gainful employment, there is insufficient evidence in the record to support his conclusion, despite the fact that the plaintiff had several doctor's visits in the months proceeding the date the plaintiff was last insured. Consequently, Dr. Harper's opinion is not entitled to controlling weight.

**Objection 4: Proper Standard for Evaluating the Plaintiff's Symptoms**

The plaintiff argues that the Magistrate Judge denied credibility to the plaintiff's complaints regarding the severity of her symptoms without addressing the threshold question of whether she had an impairment capable of causing the degree and type of pain alleged. Under the regulations, a two-step process is used to the determine whether a person is disabled by pain. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged.*' 20 C.F.R. §§ 416.929(b) & 404.1529(b)(emphasis

added)." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996).

> It is only *after* a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. *See* 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1).

*Id*. at 595.

It is the first step of the process which the plaintiff alleges that has not been addressed. In his Order, the ALJ stated: "The medical evidence shows that the claimant had Raynaud's phenomenon, fibromyalgia, depression, anxiety, and fatigue." (A.R. 19.) This is also reflected in the Report of the Magistrate Judge. *See* Report p. 2,4. The Court believes that the ALJ and the Magistrate Judge did in fact initially consider whether the plaintiff showed by objective medical evidence a medical impairment likely to cause the pain claimed. It is only after this determination was made that an assessment of the plaintiff's credibility was made.

**Objection 5: Plaintiff's Credibility**

The plaintiff objects on the basis that the Report impermissibly fails to consider the entire case record in evaluating the plaintiff's credibility. The plaintiff contends that when Dr. Harper's opinion is "properly weighed and it is acknowledged that fibromyalgia can cause pain" the plaintiff's credibility is reinforced. (Objections p. 11.) She further contends that, even if Dr. Harper's opinion is not considered, "there are indications from other physicians in the record, as well as the Plaintiff's own statements, which must be addressed in order to properly evaluate her credibility." (Objections p. 12.)

> In evaluating credibility, the
> 
> evaluation must take into account not only the claimant's statements about her pain,

> but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, *see* [20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1)]; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), *see* 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it, *see* 20 C.F.R. §§ 416.929(c)(3) & 404.1529(c)(3).

*Craig*, 76 F.3d at 595.  However,

> [a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

*Id.*

As discussed above, this Court finds that the ALJ's refusal to grant the opinion of Dr. Harper controlling weight is supported by substantial evidence. The ALJ's order clearly acknowledges a review of Dr. O'Bryan's medical opinions as well as the plaintiff's own complaints of pain. *See* A.R. p. 19-20. Contrary to the plaintiff's assertion, the Report also indicates consideration of the opinions of her other doctors as well as her own complaints. *See* Report p. 4-7. This Court finds that the ALJ's decision with regard to the plaintiff's credibility is supported by substantial evidence.

**Objection 6: Vocational Evidence Concerning the Plaintiff's RFC**

The plaintiff argues that the Report improperly evaluates the vocational evidence concerning the plaintiff's RFC for work. The plaintiff asserts that the ALJ improperly relied on the state agency physician's opinion that the plaintiff could perform light work and that "there is no substantial evidence in this record of her capability to perform Light work." (Objections p. 13.) While the plaintiff states that opinions from sources other than treating sources can never be entitled to controlling weight, she neglects to provide the whole statement. Social Security Ruling 96-2p states

13

in its Explanation of Terms that "[a]lthough opinions from other acceptable medical sources may be entitled to great weight, **and may even be entitled to more weight than a treating source's opinion in appropriate circumstances**, opinions from sources other than treating sources can never be entitled to 'controlling weight'" (emphasis added). This Court does not believe that the ALJ has given the opinion of the state agency physician "controlling weight."

The Fourth Circuit Court has held that "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). However, the questions presented to the VE need only reflect those impairments that are supported by the record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3rd Cir. 1987). The purpose of a VE's testimony is to assist in determining whether jobs exist in the economy which a particular claimant could perform. *Id*. The ALJ has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions, so long as there is substantial evidence to support the ultimate question. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986).

The ALJ posed a hypothetical to the VE, adopting limitations as found by the state medical consultant who had examined the plaintiff's medical records. The plaintiff argues that this was error because the limitations found to exist by Dr. Harper were far greater than those found by the state medical consultant, who did not examine the plaintiff. However, as noted above, the ALJ properly discounted the opinion of Dr. Harper because it was not supported by objective medical evidence from the time period in question, before the plaintiff's insured status expired. Thus, the hypothetical posed by the ALJ properly included the limitations found by the medical consultant, the only limitations

14

**found in the plaintiff's medical evidence** in the record for the period in question. The plaintiff's objection is without merit.

**Objection 7: Burden of Proof in this Case**

The plaintiff alleges that the Report fails to acknowledge that it is the Commissioner who has failed to meet her burden of proof in this case. The plaintiff alleges that the hypothetical questions proposed to the VE by the ALJ "failed to consider the entire record and all the evidence of the Plaintiff's impairments, relying solely upon the opinions of a non-treating and non-examining physician." (Objections p. 15.)

As noted in the discussion of the previous objection, the Commissioner properly questioned the VE as to those impairments that are reflected in the record. This Court finds that the Commissioner carried her burden in establishing through the testimony of the VE that there were other jobs in significant numbers which the plaintiff was capable of performing.

### Conclusion

On the record before it, this Court must overrule all objections and agree with the Magistrate Judge's recommended disposition of this case. After carefully reviewing the record in this matter, the applicable law, and the positions of the parties, the Court is constrained to adopt the recommendation of the Magistrate Judge and find that the determination of the Commissioner that the plaintiff is not entitled to benefits is supported by substantial evidence.

For the foregoing reasons, all objections are overruled, the Report and Recommendation of the Magistrate Judge is incorporated herein, and the decision of the Commissioner denying benefits is hereby **AFFIRMED**.

**IT IS SO ORDERED**

                                          s/ R. Bryan Harwell

                                          R. Bryan Harwell
                                          United States District Judge

September 27, 2005
Florence, South Carolina